ELLIOTT J. WILLIAMS, Bar No. 144835
elliott.williams@stoel.com
BRIAN D. BOLLT, Bar No. 223576
brian.bollt@stoel.com
AUSTIN L. ZUCK, Bar No. 257130
austin.zuck@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Plaintiff Lynx Franchising Intellectual
Property, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LYNX FRANCHISING INTELLECTUAL PROPERTY, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR FENCE AND CONSTRUCTION, INC., an Oregon corporation,<br><br>Defendant. | Case No.: 3:25-cv-00150-MC<br><br>**PLAINTIFF LYNX FRANCHISING INTELLECTUAL PROPERTY, LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND ENTRY OF A PARTIAL FINAL JUDGMENT** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. SUMMARY JUDGMENT BASED ON FRAUD SHOULD BE DENIED ............................. 1

    A.    Fraud on the PTO Requires Clear and Convincing Evidence and Specific Intent to Deceive as the Single Most Reasonable Inference, Which is Not Present Here ............................................................................................................. 1

        1.    There Is a "Heavy Burden" to Prove Fraud on the PTO ........................... 1

        2.    SFC Cites No Cases Granting Summary Judgment of Fraud on the PTO ....................................................................................................... 3

    B.    Background Regarding Case Filings and Incontestability Declaration ................ 3

        1.    Overview of State Court Complaint and Lynx's Incontestability Declaration ............................................................................................. 3

        2.    Response to "Background" Section ........................................................... 6

    C.    The Declaration Was Not False and Mr. Malhotra Had No Knowledge of Falsity ................................................................................................................ 8

        1.    The Declaration Statement Was True ...................................................... 8

        2.    No Evidence Shows That Mr. Malhotra Made a Knowingly False Statement ............................................................................................. 10

        3.    SFC's Motion Confirms There Are Disputes of Material Fact That Must Be Resolved by the Jury, Not the Court at Summary Judgment ............................................................................................. 11

    D.    Mr. Malhotra Did Not Have a Specific Intent to Deceive the PTO .................... 13

    E.    The Underlying 2010 Registration Should Not Be Cancelled ............................ 15

III. THE 2023 REGISTRATION SHOULD NOT BE CANCELLED ..................................... 17

    A.    Summary of Facts ............................................................................................ 17

        1.    Material Facts Undermine SFC's Claim to Own "Superior Fence" in Oregon ............................................................................................. 17

        2.    Material Facts Undermine SFC's Claim to Own "Superior Fence" in Idaho. .............................................................................................. 18

        3.    Material Facts Undermine SFC's Claim to Own "Superior Fence" in Washington. ...................................................................................... 19

    B.    Legal Standard ................................................................................................ 19

        1.    Cancellation Based on Likelihood of Confusion – Ownership and Priority. .............................................................................................. 19

153140975.7 0084049-00001

## TABLE OF CONTENTS
(continued)

**Page**

2.    Cancellation Based on Likelihood of Confusion – *Sleekcraft* Factors..................................................................................... 23

C.    SFC's Attack on the 2023 Registration Invokes Material Disputed Facts. ......... 24

1.    SFC Did Not Own "Superior Fence" in *Any Region* and *Any Time*. ....... 24

2.    SFC Caused Confusion by Using "Superior Fence & Rail" to Advertise Its Own Services in the Portland Metro Area Since 2024....... 27

3.    *Sleekcraft* Factors Confirm That Summary Judgment Is Improper......... 29

4.    Plaintiff's Affirmative Defenses Also Preclude Summary Judgment. ............................................................................. 30

IV. SUMMARY JUDGMENT IS NOT APPROPRIATE AS TO PLAINTIFF'S FIRST, SECOND, AND THIRD CLAIMS.................................................................. 31

V. CONCLUSION ............................................................................................. 35

153140975.7 0084049-00001

## TABLE OF AUTHORITIES

**Page**

**Cases**

*578539 B.C., Ltd. v. Kortz*,
No. CV 14-04375-MMM, 2015 WL 12670488 (C.D. Cal. Apr. 10, 2015) ...........................19

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986).................................................................................................................12

*Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc.*,
583 F.3d 766 (Fed. Cir. 2009).................................................................................................2

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009)................................................................................................2

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) ...................................................................................26, 29, 30

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*,
774 F.2d 1451 (9th Cir. 1985) ................................................................................................21

*Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*,
102 F. Supp. 3d 1154 (W.D. Wash. 2015).....................................................................3, 11, 14

*Comm. for Idaho's High Desert, Inc. v. Yost*,
92 F.3d 814 (9th Cir. 1996) ....................................................................................................15

*CreAgri, Inc. v. USANA Health Scis., Inc.*,
474 F.3d 626 (9th Cir. 2007) ..................................................................................................27

*Crown Wallcovering Corp. v. Wallpapers Manufacturers Ltd.*,
188 U.S.P.Q. 141 (TTAB 1975) ........................................................................................15, 16

*Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.*,
188 F.3d 501 (4th Cir 1999) ...................................................................................................22

*Duffy–Mott Co., Inc. v. Cumberland Packing Co.*,
424 F.2d 1095 (CCPA 1970) ..............................................................................................15, 16

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ................................................................................................20

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015)...............................................................................................11

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ...................................................................................29

*Great Concepts, LLC v. Chutter, Inc.*,
   90 F.4th 1333 (Fed. Cir. 2024) ......................................................................15, 16, 17

*Herbko Int'l, Inc. v. Kappa Books, Inc.*,
   308 F.3d 1156 (Fed. Cir. 2002)...................................................................................19

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
   738 F.3d 1085 (9th Cir. 2013) .............................................................................1, 3, 14

*Holiday Inns, Inc. v. Holiday Inn*,
   364 F. Supp. 775, 781 (D.S.C. 1973), *aff'd,* 498 F.2d 1397 (4th Cir. 1974) .......................9, 10

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
   489 F. Supp. 2d 1060 (N.D. Cal. 2007) .............................................................7, 10

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
   287 F.3d 866 (9th Cir. 2002) ...............................................................................30, 31

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
   68 F.4th 1203 (9th Cir. 2023) .....................................................................................35

*Jeld-Wen, Inc. v. Dalco Indus., Inc.*,
   198 F.3d 250 (8th Cir. 1999) (holding that "elite" is descriptive, like other
   "self-laudatory marks such as BEST, SUPERIOR, and PREFERRED") ..............................25

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*,
   150 F.3d 1042 (9th Cir. 1998) ....................................................................................20

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988)...................................................................................2, 7

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
   832 F.3d 1024 (9th Cir. 2016) ....................................................................................33

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005) ................................................................................19, 35

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   328 F.3d 1061 (9th Cir. 2003), *vacated on other grounds*, 543 U.S. 111 (2004)....................20

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)....................................................................................................29

*Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*,
   No. C 07-03752 JSW, 2008 WL 4614660 (N.D. Cal. Oct. 16, 2008) ...................................13

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ...................................................................................21

*Lindy Pen Co. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir. 1984) ...................................................................................32

*Manley v. Rowley*,
    847 F.3d 705 (9th Cir. 2017) ....................................................................................12

*Marketquest Grp., Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018)..........................................................19, 20, 22

*Metro Traffic Control, Inc. v. Shadow Network Inc.*,
    104 F.3d 336 (Fed. Cir. 1997)......................................................................................1

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ....................................................................................16

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*,
    745 F. Supp. 2d 1359 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012).......................23

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) .......................................................................23, 29, 32

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).................................................................................................33

*New West Corp. v. NYM Co. of California, Inc.*,
    595 F.2d 1194 (9th Cir. 1997) ...................................................................................32

*Off. Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ..........................................................................21, 26, 33

*Reddi Beverage Co., LLC v. Floral Beverages, LLC*,
    No. 23 C 6147, 2024 WL 1657420 (N.D. Ill. Mar. 4, 2024) ....................................23

*Residential Energy Servs. Network, Inc. v. Bldg. Sci. Inst. Co.*,
    No. 22-CV-1641-AGS-MSB, 2025 WL 3251165 (S.D. Cal. Nov. 21, 2025).........................17

*Robi v. Five Platters, Inc.*,
    918 F.2d 1439 (9th Cir. 1990) ...........................................................................1, 15, 16

*In re Rosuvastatin Calcium Pat. Litig.*,
    703 F.3d 511 (Fed. Cir. 2012)................................................................................2, 14

*Rudolph Int'l, Inc. v. Realys, Inc.*,
    482 F.3d 1195 (9th Cir. 2007) ...................................................................................20

*S. Cal. Darts Ass'n v. Zaffina*,
762 F.3d 921 (9th Cir. 2014) ..........................................................................21

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*,
491 F.3d 522 (6th Cir. 2007) ..........................................................................15

*Scarff v. Intuit, Inc.*,
318 Fed. Appx. 483 (9th Cir. 2008)..................................................................32

*Smith Int'l, Inc. v. Olin Corp.*,
1981 WL 48127 (T.T.A.B. 1981) ...................................................................3, 13

*Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*,
77 U.S.P.Q.2d 1917, 2006 WL 173463 (T.T.A.B. 2006)...................................3, 13

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ..........................................................................10

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)........................................................2, 3

*Treat, Inc. v. Dessert Beauty*,
No. 05-923 PK, 2006 WL 2812770 (D. Or. May 5, 2006)..............................1, 3, 14

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)......................................................................................20

*Underwood v. Bank of Am. Corp.*,
996 F.3d 1038 (10th Cir. 2021) .......................................................................26

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009).........................................................................2

*Zobmondo Ent., LLC v. Falls Media, LLC*,
602 F.3d 1108 (9th Cir. 2010) .........................................................20, 21, 22, 25

**Statutes**

15 U.S.C. § 1052................................................................................20, 34

15 U.S.C. § 1057.....................................................................................22

15 U.S.C. § 1072.....................................................................................22

15 U.S.C. § 1051 *et seq.*.........................................................................22

ORS 648.007 *et seq.*..............................................................................27

**Other Authorities**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (5th ed. 2026) ...............................................................................................20, 21, 22, 25

Restatement (Third) Unfair Competition § 19 cmt. b (A.L.I. 1995) .............................................21

S. Rep. No. 100-515, *reprinted,* U.S.C.C.A.N. 5577 (1988)..........................................................22

## I. INTRODUCTION

Defendant ("SFC")'s Motion seeks summary judgment for purported fraud on the PTO and likelihood of confusion, but fails on both. As to the purported fraud, SFC bears a heavy burden to prove that a specific intent to deceive the PTO is the single most reasonable inference. The Motion does not satisfy that burden and instead points to disputed facts and asks the Court to draw inferences in its favor, which is forbidden on summary judgment.

As to the purported confusion, SFC's Motion again depends on resolving fact-intensive disputes in SFC's favor. SFC has not established that it owns a protectable mark, that it has priority, or that confusion is undisputed. To the contrary, the record shows widespread third-party use of "Superior Fence," that the phrase is descriptive (or generic), and a litany of material disputes that cannot be decided at summary judgment.

## II. SUMMARY JUDGMENT BASED ON FRAUD SHOULD BE DENIED

### A. Fraud on the PTO Requires Clear and Convincing Evidence and Specific Intent to Deceive as the Single Most Reasonable Inference, Which is Not Present Here

#### 1. There Is a "Heavy Burden" to Prove Fraud on the PTO

To demonstrate fraud, SFC must show "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)). SFC is silent about the "heavy burden of demonstrating that a trademark should be cancelled," *id.*, and that fraud requires clear and convincing evidence, *Treat, Inc. v. Dessert Beauty*, No. 05-923 PK, 2006 WL 2812770, at *3 (D. Or. May 5, 2006) (quoting *Metro Traffic Control, Inc. v. Shadow Network Inc.,* 104 F.3d 336, 340 (Fed. Cir. 1997)).

Page 1 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

Where, as here, there is no direct evidence of intent, intent may be inferred only where the specific "intent to deceive the PTO [Patent and Trademark Office] must be 'the single most reasonable inference able to be drawn from the evidence.'" *In re Rosuvastatin Calcium Pat. Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc)); ECF 40 ("MTD Order") at 6 (same). Thus, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91; *id.* ("[T]he evidence 'must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances.'" (emphasis in original) (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988)).

An intent to deceive is an independent requirement for a finding of fraud. In other words, even if an applicant knowingly submitted a false material representation, that is insufficient to establish an intent to deceive the PTO. *See, e.g.*, *Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc.*, 583 F.3d 766, 777 (Fed. Cir. 2009) (affirming summary judgment of no fraud on the PTO where "Appellants offer no evidence or suggestion of deceptive intent, other than the fact that this information was not provided"); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1332 (Fed. Cir. 2009) (affirming judgment of no fraud on PTO based on "no genuine showing of deceptive intent" when "Mr. Barnard explained that … he believed the statement to be true at the time that he made it"). Moreover, even if an intent to deceive may be inferred from the evidence, such an inference "can be rebutted by showing that the misrepresentation was borne from an honest mistake or inadvertence." MTD Order at 6 (citing *In re Bose Corp.*, 580 F.3d 1240, 1246 (Fed. Cir. 2009) ("There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive.")).

Here, SFC cannot prove that (i) the statement was false, (ii) Mr. Malhotra knew the

statement was false, (iii) there are no other reasonable inferences (other than a specific intent to deceive) to be drawn from the evidence, and (iv) no disputes of material facts exist. Each of these individually prevents summary judgment. *See Hokto*, 738 F.3d at 1092 ("'[V]iewing the evidence in the light most favorable to the nonmoving party,' we must determine 'whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law.'" (alteration in original) (quotation and citation omitted)).

### 2. SFC Cites No Cases Granting Summary Judgment of Fraud on the PTO

SFC's failure to cite analogous cases is not surprising because courts routinely deny motions for summary judgment seeking to cancel trademark applications for fraud. *See, e.g.*, *id.* at 1098 (affirming denial of summary judgment of fraud: "[defendant] has also failed to put forward evidence of intent, reliance, or damages. Instead … [defendant] relies 'purely on attorney argument to support its position.'"); *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, 102 F. Supp. 3d 1154, 1168 (W.D. Wash. 2015) (denying summary judgment of trademark fraud: "the court cannot say that a jury considering [defendant]'s evidence could only reasonably find a willful intent to deceive" (citation omitted)); *Treat*, 2006 WL 2812770, at *14 (denying summary judgment regarding alleged trademark fraud).

SFC cites only two cases that it asserts are analogous: *Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 U.S.P.Q.2d 1917, 2006 WL 173463 (T.T.A.B. 2006) and *Smith Int'l, Inc. v. Olin Corp.*, 1981 WL 48127, at *13 (T.T.A.B. 1981). *See* Mot. at 18, 19. Neither case was decided at summary judgment and both decisions came before *Therasense*.

### B. Background Regarding Case Filings and Incontestability Declaration

### 1. Overview of State Court Complaint and Lynx's Incontestability Declaration

On October 7, 2024, SFC served its Complaint for "Unfair Competition; Dilution of

Trade Name" in Oregon State Court (the "State Complaint") against McGraw Enterprises L.L.C. ("McGraw"). Declaration of Elliott Williams ("Decl."), Ex. 1. McGraw is a franchisee of Superior Fence and Rail ("SFR") and licenses certain intellectual property from Lynx in connection with its franchise agreement. The State Complaint did not name either Lynx or SFR as a defendant or otherwise reference Lynx or SFR. *Id.* The State Complaint did not mention any trademark registration—either state or federal—of SFC, McGraw, Lynx, or SFR. *Id.* The State Complaint included allegations of unfair competition and dilution of trade name in Multnomah, Clackamas, and Washington counties. *See* Ex. 1 at 3-4.

On July 2, 2024, McHale & Slavin, Lynx's trademark prosecution counsel, discovered that the prior owners of the SUPERIOR FENCE & RAIL, INC. mark did not timely file a Section 15 declaration of incontestability. Declaration of Carl Spagnuolo ("McHale Decl.") ¶¶ 3-5. Also on July 2, 2024, McHale & Slavin alerted a Lynx staff attorney to this discovery and that a declaration should be filed. *Id.* Due to the Lynx staff attorney's departure from Lynx and email delivery issues preventing these communications from reaching Lynx's inbox, Lynx personnel had not received many of McHale & Slavin's communications. *Id.* ¶¶ 6; Declaration of Sanjay Malhotra ("Malhotra Decl.") ¶ 3.

On October 8, the State Complaint was sent to Mr. Malhotra, the general counsel and corporate secretary of SFR and Lynx. ECF 63-6 ("Malhotra Tr.") at 40:19-41:2. Mr. Malhotra then forwarded the State Complaint to a staff attorney to review and discuss. Malhotra Tr. at 42:8-23. There is no evidence that Mr. Malhotra discussed or knew of the substance of the allegations contained in the State Complaint on October 8 or in the days that followed. *See* Malhotra Tr. at 119:10-13 ("Q. Did you, in fact, discuss that day with Mr. Martin the summons and complaint? A. I don't think so. I'm pretty sure that we did not."), 119:18-25 ("A. As I stated

Page 4 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

before, I don't recall any conversation with Shawn on the specific allegations, defenses, and whatnot about -- about that complaint. Because as I mentioned, really the initial discussions that we had had to do with representation, given that an Empower entity was not named as the – as a defendant in the case."). During deposition, Mr. Malhotra testified that he did not have any knowledge or belief that the State Complaint involved Lynx's ownership of the marks at issue. *See* Malhotra Tr. at 42:8-17 ("A. I don't think I actually had any understanding of the complaint. All I knew was that it involved the Superior Fence & Rail brand. It's usually kind of the first thing I have to do which is, okay, which brand are we talking about here so I can kind of channel things. And then I forwarded it to one of my staff attorneys and asked him to look into it."), 43:10-15 ("Q. Did you understand the plaintiff in that Oregon lawsuit was seeking an injunction to prohibit a Superior Fence & Rail franchisee from using the word Superior Fence in its d/b/a or company name and advertising? A. No. I don't think I looked at the complaint to be able to know that. My recollection, as best, I looked at the caption. … .").

On or around October 10, 2024, Lynx and McHale & Slavin discovered and resolved the email delivery errors, which resulted in McHale & Slavin sending several outstanding trademark prosecution documents in the following days that required Lynx's signature. Malhotra Decl. ¶ 3; McHale Decl. ¶¶ 5-11. On October 14, Mr. Malhotra received the incontestability declaration from McHale & Slavin for his signature. Decl., Ex. 2 at PRIV_022-23; Malhotra Decl. ¶ 3; McHale Decl. ¶¶ 5-11. That same day, Mr. Malhotra reviewed, signed, and returned the declaration. *Id.*; Malhotra Tr. at 100:3-9 ("[A.] McHale & Slavin had been sending us some reminders and resending some e-mails that they had sent from September and that they were waiting for – for me to sign off on some of this paperwork and get it back to them."), at 100:10-101:1 ("[Q.] So is this you sending back the signed declarations to your trademark attorney? A. I

believe so, yes."). Mr. Malhotra did not request or otherwise discuss a desire to file the incontestability statement of the SUPERIOR FENCE & RAIL, INC. mark with trademark prosecution counsel. *See* Malhotra Decl. ¶¶ 3-4; McHale Decl. ¶¶ 10-12. McHale & Slavin did not have knowledge of the State Complaint or SFC's allegations against McGraw. McHale Decl. ¶¶ 9-12; *see* Malhotra Tr. at 65:4-8. McHale & Slavin filed the declaration on October 14, 2024.

### 2. Response to "Background" Section

SFC's "background" section includes a variety of statements and arguments that are irrelevant to the question of fraud, are disputed, or are speculative legal conclusions. For example, SFC discusses Mr. McGraw's purported knowledge of SFC and receipt of a cease and desist letter. Mot. at 8. As SFC recognizes, there is no evidence that Lynx or Mr. Malhotra possessed this knowledge until after receiving the State Complaint in October 2024. Mot. at 9. Additionally, neither Mr. McGraw's knowledge nor a cease and desist letter is a "proceeding involving" Lynx's rights as discussed in the incontestability declaration.

Even assuming Mr. Malhotra understood the State Complaint involved use of the "Superior Fence & Rail" name or was a "name use dispute," Mot. at 9, he testified at deposition that, on and around the time of signing the incontestability declaration, he did not have an "understanding of the complaint" beyond that it "involved the Superior Fence & Rail brand," and that he did not "consider[] the filing of the case, the state case against McGraw as a proceeding involving said rights pending and not disposed of either in the United States Patent and Trademark Office or in court." Malhotra Tr. at 42:8–12, 79:17–21. Mr. Malhotra also testified that he is "still not sure what's the — what's erroneous about the submission of this declaration that makes you ask that question." Malhotra Tr. at 66:20–23. Mr. Malhotra's testimony does not demonstrate knowledge of falsity or a specific intent to deceive—instead, it proves the opposite.

Page 6 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

SFC also references a November 4, 2024 email from Mr. Williams. Mot. at 10. The email came weeks after the declaration was signed and submitted and has no relevance to Mr. Malhotra's knowledge or intent with respect to the October 14, 2024 declaration.

SFC discusses Mr. Malhotra's investigation and alleges that Mr. Malhotra purportedly did not make a sufficient inquiry and that "[m]aking no inquiry into the facts under these circumstances is sufficient to find fraud here." Mot. at 10, 18. Not so. Mr. Malhotra is familiar with Lynx's intellectual property and testified that he reasonably relies on longtime prosecution counsel. *See* Malhotra Tr. at 63:9-25 ("[A.] [W]hat I'm doing is, the inquiry would be my counsel to prepare the document for me to sign. And if they have provided it to me, then they're giving me the green light to sign."). The reasonableness of Mr. Malhotra's investigation is at the very least a disputed issue of fact that must be resolved by the jury. And, even if Mr. Malhotra's investigation could be branded as negligent (it was not), negligence is insufficient to find intent. *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 489 F. Supp. 2d 1060, 1073 (N.D. Cal. 2007) ("Gross negligence or carelessness, without more, is an insufficient basis to find intent to deceive.") (citing *Kingsdown,* 863 F.2d at 873).

SFC continues to conclude that Mr. Malhotra allegedly "intentionally filed a false and fraudulent" declaration "so [Lynx] and its licensee could falsely allege [incontestability] in pending litigation." Mot. at 12. This attorney argument and conclusion is neither true nor reasonably inferred from any evidence. Indeed, both are directly rebutted by the facts. Mr. Malhotra testified he did not consider the statement to be false and that he had not connected the suit with McGraw and the declaration. *See* Malhotra Tr. at 60:25-61:7 ("A. At no time when I signed that or around the time when I signed it did I connect the filing of that lawsuit against McGraw with this declaration."), 79:17-21 ("A. Yeah, I don't think I considered the filing of the

case, the state case against McGraw as a proceeding involving said rights pending and not disposed of either in the United States Patent and Trademark Office or in court."); 66:20-23 (A: "I'm still not sure what's the -- what's erroneous about the submission of this declaration … .").

SFC then asserts that "Lynx could, and should, have withdrawn its Declaration," Mot. at 12, but this would only have been necessary if Lynx had indeed fraudulently submitted the incontestability declaration—or at the very least believed that the declaration was materially false. SFC cites no authority for cancellation of incontestability or registration for a failure to withdraw within two months of filing. The question here is not whether Lynx should have withdrawn the declaration; it is whether the statement made in the October 14 declaration (1) was false, (2) if so, whether Mr. Malhotra (or Lynx) had knowledge that the statement was false, and (3) if so, whether Mr. Malhotra (or Lynx) submitted the declaration with a specific intent to deceive the PTO. The answer to each of these questions is a resounding <u>no</u>.

**C.    The Declaration Was Not False and Mr. Malhotra Had No Knowledge of Falsity**

**1.    The Declaration Statement Was True**

The incontestability declaration text states, in relevant part:

> There has been no final decision adverse to the **owner's claim of ownership** of such mark for such goods/services, or to indicate membership in the collective membership organization, or to th**e owner's right to register the same or to keep the same on the register**; and there is no proceeding involving **said rights** pending and not disposed of either in the United States Patent and Trademark Office or in a court.

Mot. at 14 (emphasis added). SFC alleges that Lynx committed fraud because SFC's State Complaint against McGraw—one of Lynx's licensees and SFR's franchisees—involving McGraw's use of the term "Superior Fence" in three Oregon counties constitutes a "proceeding involving said rights pending and not disposed of … in a court." Mot. at 6-7, 10, 13, 18. Not so.

The recitation of "said rights" in the declaration refers back to the "owner's claim of

Page 8 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ownership of such mark" or the "owner's right to register the same or keep the same on the register." These rights of Lynx were not at issue in the State Complaint. There was no challenge to Lynx's "claim of ownership" to the SUPERIOR FENCE & RAIL, INC. registration. There was no challenge to Lynx's "right to register the" mark. The mark was registered over 10 years before the State Complaint was filed, and the State Complaint did not challenge Lynx's ownership, right to register, or right to "keep the [mark] on the register." Any challenge was specific to *McGraw's use* of the mark in Oregon—not Lynx's rights.

This interpretation was adopted and applied in *Holiday Inns, Inc. v. Holiday Inn*, 364 F. Supp. 775, 781 (D.S.C. 1973), affirmed by the Fourth Circuit, 498 F.2d 1397 (4th Cir. 1974). *Holiday Inns* involved surprisingly similar facts as presented here. In *Holiday Inns*, there "was litigation pending in Horry County, South Carolina regarding the use of the name Holiday Inn" when the plaintiff filed a declaration of incontestability. 364 F. Supp. at 781. The defendant in *Holiday Inns* asserted that because there was a pending litigation involving the plaintiff's "Myrtle Beach franchisee, which action was still pending in 1960 when plaintiff filed its affidavits, that such incontestable status was improperly and fraudulently obtained." *Id.* The court rejected defendant's assertion, holding that "[t]he suit in Horry County did not involve the 'registrant' and *only involved the right of plaintiff's franchisee to use the name Holiday Inn in the Myrtle Beach area. It did not involve plaintiff's right to register its marks or plaintiff's right to maintain the same on the register*." *Id.* (emphasis added). The court concluded that "[n]o evidence was presented by the defendant amounting to any fraud on behalf of the plaintiff in filing the affidavits in connection with the incontestable status." *Id.* at 782.

*Holiday Inns* is directly applicable here. As with the plaintiff there, the State Complaint "only involved the right of plaintiff's franchisee [here, McGraw] to use the" SFR name in the

Tri-County area. *Id.* at 781. The State Complaint, "did not involve plaintiff's [here, Lynx] right to register its marks or plaintiff's right to maintain the same on the register." *Id.* As such, there was no false representation. Even if this interpretation is disputed, the reasonableness of this interpretation is supported by the Trademark Manual of Examining Procedure and other courts' interpretation of this language, as acknowledged by the MTD Order. *See* MTD Order at 13-14.

### 2. No Evidence Shows That Mr. Malhotra Made a Knowingly False Statement

SFC glosses over the second element of fraud, *see* Mot. at 15-16, which requires that "the registrant's knowledge or belief that the representation is false." SFC leans heavily on the Court's earlier motion-to-dismiss analysis, but that posture is materially different. At the pleading stage, the Court assumed SFC's allegations were true; at summary judgment, the Court must draw all reasonable inferences in Lynx's favor. *See* MTD Order at 4, 2 n.1; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Now that the record includes Mr. Malhotra's testimony, SFC cannot obtain summary judgment by recycling allegations that merely survived a motion to dismiss.

Even assuming the declaration contained a false statement (it does not), nothing shows that Mr. Malhotra knew the statement was false. Mr. Malhotra testified that he did not believe the State Complaint implicated Lynx's rights as described in the incontestability statement. *See* Malhotra Tr. at 60:25-61:7, 79:17-21, 66:20-23. And, even if Mr. Malhotra's belief or his investigation into the facts is found to be negligent (it was not), this does not amount to knowledge of falsity or an intent to deceive. *See Informatica*, 489 F. Supp. 2d at 1073.

SFC asserts that the "facts [SFC] alleged have proved true." Mot. at 16. But this is plainly incorrect. No evidence supports SFC's assertion that the incontestability statement was submitted because of the State Complaint. What the evidence shows is that Mr. Malhotra received a request

to sign the incontestability declaration from separate trademark counsel who had no knowledge of the State Complaint (or the associated complaints), and that Mr. Malhotra reviewed, signed, and returned the document. *See* Malhotra Tr. at 58:15-22 ("A. This document was provided to me by -- in addition to other similar documents by our IP trademark counsel who monitor our trademarks' renewals. And I rely on them for the manner in which these are formed. They typically send it to me, they ask me to sign. I take a look, I look at it as part of my administrative function, and I sign the document and send it back to them as requested."), 100:10-101:1; Decl., Ex. 2 at PRIV_022-25; Malhotra Decl. ¶¶ 3-4; McHale Decl. ¶¶ 2-12.

In sum, the evidence in no way "prove[s] true" SFC's speculative allegations, and granting summary judgment on SFC's incorrect spin on the facts is improper. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1315 (Fed. Cir. 2015) (vacating summary judgment because the "district court improperly resolved genuine disputes of material fact in favor of Covidien instead of Ethicon, the non-moving party").

In addition to there being insufficient evidence on which to find that Mr. Malhotra knew the declaration statement was not true, Mr. Malhotra's belief in the truth of the statement is a dispute of material fact that must be resolved by the jury, not this Court. *See Clearly Food*, 102 F. Supp. 3d at 1175 (denying summary judgment because the trademark at issue "raise[s] questions of material fact that a jury could reasonably resolve in Clearly Food's favor").

### 3. SFC's Motion Confirms There Are Disputes of Material Fact That Must Be Resolved by the Jury, Not the Court at Summary Judgment

SFC's Motion presents various purported reasons why Mr. Malhotra's belief in the truth of his statements cannot be "excuse[d]." Mot. at 16-19. None of SFC's reasons satisfy its burden to prove by clear and convincing evidence that the statement was false or that Mr. Malhotra knew it was false. Instead, SFC's arguments demonstrate the numerous reasons why he

reasonably believed that the statement was true and that disputes of material fact remain.

SFC first argues that Mr. Malhotra must have believed the statement to be false because he is an attorney, that the State Complaint "is only four pages and simple to read," that he "knew enough," and that he took "no effort whatsoever to verify" the statement. Mot. at 16-17. Mr. Malhotra testified about what he understood from the State Complaint at the time he signed the declaration, and that his understanding was that it did not involve Lynx's "claim of ownership" to the mark or "right to register the same or to keep the same on the register," as recited in the declaration. *See, e.g.*, Malhotra Tr. at 79:17-21 ("A. Yeah, I don't think I considered the filing of the case, the state case against McGraw as a proceeding involving said rights …"); *see also id.* at 42:8-17, 46:11-19. Mr. Malhotra also testified that he reasonably relies on McHale Slavin in addition to his knowledge and involvement in Lynx's intellectual property and SFR's brand. *See* Malhotra Tr. at 58:15-22, 62:9-16, 75:18-22. The information Mr. Malhotra had, what he believed, and what he knew are disputed facts. SFC's presuppositions and assumptions about Mr. Malhotra's knowledge and what constitutes a reasonable inquiry into the facts cannot supplant the jury's role to evaluate the evidence and make factual determinations. *See Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) ("[A] court ruling on a motion for summary judgment may not engage in '[c]redibility determinations' or 'the weighing of evidence,' as those are functions reserved for the jury.") (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

SFC next argues that "Lynx's knowledge of the complaint includes that of all its attorneys and employees," and that Mr. Malhotra's forwarding of the State Complaint must mean that Lynx as an entity knew the statement was false. Mot. at 17. SFC cites no authority or evidence for this proposition and this speculative and baseless assertion should be rejected.

Finally, SFC's arguments regarding whether Mr. Malhotra's statement was a mistake is a

red herring. As discussed above, Mr. Malhotra's statement was not false, and thus was not a mistake as there was nothing to correct. And, even if it is found to be false, the *Std. Knitting* case that SFC cites is inapplicable. *See* Mot. at 18 (citing *Std. Knitting*, 2006 WL 173463, at *11-12). *Std. Knitting* is a pre-*Therasense* TTAB case that applies a standard for fraud that does not require any specific intent. *See Std. Knitting*, 2006 WL 173463, at *13 ("The specific or actual intent of Mr. Wang and Mr. Yarnell is not material to the question of fraud."). A Ninth Circuit district court distinguished *Std. Knitting* under similar fraud allegations of filing an incontestability statement despite an earlier-filed proceeding and of an insufficient investigation. *See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2008 WL 4614660, at *9 n.17 (N.D. Cal. Oct. 16, 2008) (granting summary judgment *against* the defendant, explaining "Abercrombie bears a 'heavy' burden of proof on its [fraud] counterclaim."). SFC's reliance on *Smith* fails for similar reasons. *See* Mot. at 19 (citing *Smith*, 1981 WL 48127, at *13). *Smith* is also a pre-*Therasense* TTAB decision. *Id.* In *Smith*, the TTAB found that the applicant's "disclaimer of benefits under Section 15" served as a "tacit[] admi[ssion]" that the applicant's declaration was "clearly erroneous." 1981 WL 48127, at *11. Here, not only would similar factual findings against non-movant Lynx be inappropriate on summary judgment, but there are no such facts suggesting knowledge of the alleged falsity.

## D.    Mr. Malhotra Did Not Have a Specific Intent to Deceive the PTO

SFC argues that there is "no genuine dispute that Malhotra and Lynx intended to and did induce reasonable reliance" by the PTO. Mot. at 19. SFC's purported support for this assertion is SFC's speculation that Lynx filed the declaration because Lynx had a purported "motivation to try to shore up and strengthen the 2010 registration in view of the litigation related to it." Mot. at 19-20. This is disputed and no evidence suggests an intent to deceive the PTO. Mr. Malhotra

Page 13 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

explained that trademark prosecution counsel sought submission of the declaration and that Mr. Malhotra did not consider the litigation as inconsistent with—let alone the "motivation" for—filing the incontestability statement. Malhotra Tr. at 42:8–12, 79:17–21, 66:20–23; Malhotra Decl. ¶¶ 3-4; McHale Decl. ¶¶ 9-12. SFC's accusation of fraud is built upon unsupported speculation and conjecture and must be rejected.

Indeed, SFC's argument is noticeably devoid of any documentary evidence. SFC's sole evidence is two of Lynx's responses to requests for admission where Lynx admitted that "Mr. Malhotra knew that a case had been filed objecting to McGraw's use of the phrase 'Superior Fence' in its name." Mot. at 19-20 (citing Ex. 9). This is consistent with Mr. Malhotra's testimony and, as discussed above in Section II.C.1, an objection to the use of McGraw's use of "Superior Fence" in the Portland Metro Area does not render the affidavit false, let alone constitute knowledge of falsity or an intent to deceive.

A finding of fraud requires that the specific "intent to deceive the PTO … be 'the single most reasonable inference able to be drawn from the evidence,'" *In re Rosuvastatin*, 703 F.3d at 519, and that such inference be proved by clear and convincing evidence, *Treat*, 2006 WL 2812770, at *3. Based on the evidence presented, an intent to deceive the PTO is not a reasonable, and certainly not the single most reasonable, inference from the evidence. *See, e.g.*, *Hokto*, 738 F.3d at 1098-99 (denying summary judgment of trademark fraud); *Clearly Food*, 102 F. Supp. 3d at 1168 (same); *Treat*, 2006 WL 2812770, at *14 (same).

Finally, SFC's single sentence regarding its purported damages does not prove damages by clear and convincing evidence. *See* Mot. at 20 (alleging harm to SFC "by creating obstacles to its assertion of its trademark rights in Oregon and Washington, and complicating, expanding and making more expensive this case and the related state court case"). SFC identifies no "obstacles

Page 14 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

to its assertion of its trademark rights" that have purportedly occurred because of Lynx's incontestability declaration. SFC has never alleged that it sought or was denied a federal trademark. In fact, SFC filed for an Oregon trademark in mid-2025 after the inception of the relevant litigation and Oregon quickly granted its trademark application. *See* ECF 44 at 20 (Def.'s April 2025 Oregon trademark application). Moreover, SFC cites no authority for its proposition that litigation expenses constitute "damages" for purposes of satisfying the fifth element of fraud. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("[T]he amounts CIHD was alleging as damages were simply costs of litigation. No authority suggests that a plaintiff's time spent in litigation over trademark infringement is compensable as damages for the infringement. The district court was therefore correct in granting summary judgment to the appellants' on CIHD's claim for damages."). Speculative and unsupported "damages" are insufficient to sustain summary judgment. *See id.*; *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 531 (6th Cir. 2007) ("Speculative damages cannot support a cause of action for fraud.").

**E.      The Underlying 2010 Registration Should Not Be Cancelled**

Any finding of fraud should apply only to incontestability. Lynx is mindful of the Court's previous statements regarding *Robi* (*see* 11/7/2025 hearing Tr. at 13, 17; MTD Order at 19), but respectfully requests that the Court reconsider the application of *Robi* and instead apply *Great Concepts, LLC v. Chutter, Inc.*, 90 F.4th 1333, 1342–43 (Fed. Cir. 2024).

*Robi* itself relied on TTAB and Court of Customs and Patent Appeals ("CCPA") precedents that were abrogated in *Great Concepts*. *Robi*, 918 F.2d at 1444 (citing *Crown Wallcovering Corp. v. Wallpapers Manufacturers Ltd.*, 188 U.S.P.Q. 141, 143–44 (TTAB 1975); *Duffy–Mott Co., Inc. v. Cumberland Packing Co.*, 424 F.2d 1095 (CCPA 1970)). The CCPA is

the Federal Circuit's predecessor court, and the TTAB is reviewed by, and bound by, the Federal Circuit. *Great Concepts* narrowed and distinguished the holding of CCPA's *Duffy-Mott* decision and overruled the TTAB's *Crown Wallcovering* case—the two authorities on which *Robi* relied:

> In *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (internal citations omitted), the Ninth Circuit stated: "Any false statements made in an incontestability affidavit may jeopardize not only the incontestability claim, but also the underlying registration. In particular, filing a fraudulent incontestability affidavit provides a basis for canceling the registration itself." Robi cites to *Duffy-Mott* and *Crown Wallcovering* as the bases for its conclusions. *See id.* As we disagree with the Board's reading of *Duffy-Mott* and disagree that *Duffy-Mott* supports the Board's holding in *Crown Wallcovering*, we are likewise unpersuaded by *Robi*.

*Great Concepts*, 90 F.4th at 1342–43. While the Federal Circuit, as a sister circuit to the Ninth Circuit Court of Appeals, cannot overrule *Robi*, it can, and did, abrogate the authority that *Robi* purported to follow. *Cf. Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) ("In future cases of such clear irreconcilability, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled."). *Great Concepts* also concluded that the trademark statute does not authorize cancellation of a registration based on a defect in the incontestability affidavit. Statutory limits on the authority to cancel a trademark registration are binding on all courts, and *Robi* did not hold otherwise. *Robi* did not address statutory limits on authority, but simply cited to the now-abrogated CCPA and TTAB decisions. Moreover, *Robi* is distinguishable as it involved "a misleading exemplar [filed] with [the] original application," 918 F.2d at 1444, where here no such fraud is presented in SFC's Motion with respect to the original application.

Additionally, in a November 21, 2025 decision occurring after the motion to dismiss hearing in this case, a court in this Circuit agreed that *Great Concepts* rejected the cases on which *Robi*'s reasoning relied, and further recognized that *Great Concepts* "makes [defendant]'s

Page 16 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

burden of challenging this trademark *more* difficult." *Residential Energy Servs. Network, Inc. v. Bldg. Sci. Inst. Co.*, No. 22-CV-1641-AGS-MSB, 2025 WL 3251165, at *1 (S.D. Cal. Nov. 21, 2025) (discussing "New Law") (emphasis in original) (citing *Great Concepts*, 90 F.4th 1333). *Residential Energy* explained that "[a]fter [*Great Concepts v.*] *Chutter*, [defendant] must first establish that the mark's 'incontestability status' was 'obtained fraudulently,' warranting cancellation of its incontestability, and only then may it challenge the HERS mark's registration." *Id.* Lynx respectfully requests that, like *Residential Energy*, this Court adopt *Great Concepts'* reasoning and limit any finding to incontestability, not registration.

### III.  THE 2023 REGISTRATION SHOULD NOT BE CANCELLED

SFC's request to cancel the 2023 Registration "due to confusing resemblance" likewise fails. SFC asserts ownership of "Superior Fence" and argues that confusion is undisputed. Mot. at 21–24. SFC cites no authority governing likelihood of confusion and ignores substantial evidence creating genuine disputes of material fact precluding summary judgment.

### A.    Summary of Facts

SFC asserts ownership of three different trademark marks: "Superior Fence," "Superior Fence & Construction" and the stylized word mark (logo) shown in SFC's Second Amended Answer and Counterclaims. ECF 15 at 17 ("Prior Rights" defense); *see also* Mot. at 21. SFC asserts ownership of three marks in three states "since the 1990's." ECF 15 at 17; Mot. at 21. SFC alleges prior trademark rights in all of Oregon, Idaho, and Washington, not merely in the Portland Metro Area. ECF 15 at 17; ECF 62 (Greg Heath Declaration) ¶ 3.

### 1.    Material Facts Undermine SFC's Claim to Own "Superior Fence" in Oregon

"Superior Fence" in Klamath Falls was "established in 1979" and continues in operation today. Decl., Ex. 3. The online records of the Oregon Construction Contractors Board (CCB)

Page 17 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

contain a registered contractor's license 36257 associated with the ABN "Superior Fence" that was first licensed to Richard Graham in 1981. *Id.* at LYNX_00000129. The CCB further associates license number 36257 with the license number 181369 for Superior Fence LLC. *Id.* at LYNX_00000213. Although the Oregon Secretary of State records for Superior Fence LLC go back to 2006, the CCB evidence (Decl., Ex. 3 at LYNX_00000218) shows that Superior Fence LLC is a continuation of a contracting business known as Superior Fence that has been licensed in Oregon since 1981. The website of Superior Fence in Klamath Falls (*Id.* at LYNX_00000269), claims to have been in business since 1979, further corroborating that timeframe. The Oregon Secretary of State record for Superior Fence in Klamath Falls indicates that the company is authorized to operate in the Jurisdiction of "Oregon," without limitation to any specific counties.

Several other Oregon businesses used "Superior" in connection with fencing during the relevant time period: Superior Deck & Fence (2018-2024), Superior Fence & Deck (2012-2018), Superior Building Services (2010-2017), Superior Concrete Fence of Texas (2004 to 2025), and Superior Fencing (2003 to 2025). Decl., Exs. 4-8.

**2.     Material Facts Undermine SFC's Claim to Own "Superior Fence" in Idaho.**

Lynx's licensee "Superior Fence & Rail" of Treasure Valley is active and subsisting since April 8, 2020. Decl., Ex. 9. SFC allowed its Idaho business registration to lapse in 1998 and has not renewed it. Decl., Ex. 10. SFC's owner and FRCP 30(b)(6) corporate designee testified that SFC has not regularly installed fences in Idaho since the 2000's, and none in the last three years. Decl. Ex., 11 ("Heath Tr.") at 59:5- 60:1; 60:22-61:1. Other fencing companies are using the phrase "Superior Fence" in Idaho: "Superior Fence and Supply" since 2023, "Superior

Fence Solutions" since 2022, and "Superior Fence" since 2007. Decl. Ex., 12. None of these assumed business registrations are affiliated with SFC.

     **3.     Material Facts Undermine SFC's Claim to Own "Superior Fence" in Washington.**

"Superior Fence & Rail" of Tacoma and "Superior Fence & Rail" of Greater Seattle are each active and subsisting since SFC allowed its Washington business registration to lapse on November 3, 2023 and did not renew it until October 2025, during this litigation. Decl., Ex. 13. Meanwhile, other fencing companies registered to use the phrase "Superior Fence" in Washington, including "Superior Fence & Dirt Worx Inc." in 2023, "Superior Fence Inc." in 2023, and "Superior Fence and Gate Co." from 2008 to 2019. Decl., Ex. 14.

**B.     Legal Standard**

     **1.     Cancellation Based on Likelihood of Confusion – Ownership and Priority.**

    Trademark validity is "an intensely factual issue." *KP Permanent Make–Up,* 408 F.3d at 605; e.g., *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1263 (S.D. Cal. 2018) (denying summary judgment where a reasonable juror could find asserted mark descriptive and concluding that genuine disputes regarding secondary meaning must be resolved by factfinder). Thus, "summary judgment is generally disfavored in the trademark arena." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005) (citation omitted).

     To cancel a trademark registration based on a likelihood of confusion, the challenger must prove that it acquired its mark prior to first use of the challenged mark and that registration of the mark creates a likelihood of confusion. *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1161-62 (Fed. Cir. 2002); *accord 578539 B.C., Ltd. v. Kortz*, No. CV 14-04375-MMM (MANx), 2015 WL 12670488, at *13 (C.D. Cal. Apr. 10, 2015). "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation ... they may

Page 19 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Trademark categories of suggestive, arbitrary, or fanciful "are deemed inherently distinctive and are automatically entitled to protection." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 328 F.3d 1061, 1067 (9th Cir. 2003), *vacated on other grounds*, 543 U.S. 111 (2004). "Deciding whether a mark is distinctive or merely descriptive is far from an exact science and is a tricky business at best." *Marketquest Grp., Inc.*, 316 F. Supp. 3d at 1258 (quotation mark and citation omitted). On one end, suggestive marks require "a consumer [to] use imagination or any type of multistage reasoning to understand the mark's significance." *Id.* (brackets in original) (quoting *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998)). In contrast, descriptive marks "define qualities or characteristics of a product in a straightforward way." *Id.* "[W]hich classification applie[d] to a particular mark is a factual determination." *Id.* (citation omitted).

Generic marks are not eligible for trademark protection. *Entrepreneur Media, Inc.*, 279 F.3d at 1141. A merely descriptive phrase is not inherently distinctive and thus does not become a "mark" unless it has acquired distinctiveness, "as used on or in connection with the [owner's] goods in commerce," also known as secondary meaning. 15 U.S.C. § 1052(f); 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* ("*McCarthy*") § 15:1 (5th ed. 2026) ("[T]o achieve trademark status, that designation must be proven to have acquired distinctiveness as a mark in buyers' minds."). The most-used test of whether a mark is merely descriptive is the "imagination" test and "asks whether 'imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced.'" *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010) (quoting *Rudolph Int'l, Inc. v. Realys, Inc.*, 482 F.3d 1195, 1198 (9th Cir. 2007)). The Ninth Circuit "makes it clear that merely

descriptive marks need not describe the 'essential nature' of a product; it is enough that the mark describe some aspect of the product." *Id.* at 1116 (holding the mark 'Micro–Precision' merely descriptive for wheel balancers and weights (citation omitted)). Another test of whether a designation is descriptive "is to determine the extent to which other sellers have used the designation on similar goods and services." *McCarthy* § 11:69 (5th ed. 2026).

To acquire ownership of a descriptive mark, proof of secondary meaning must relate to the entirety of the mark, not a component or portion of the mark. *Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ("The marks must be considered in their entirety and as they appear in the marketplace."); *see also Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) ("The validity of a trademark is to be determined by viewing the trademark as a whole.").

To prove priority in a descriptive mark, the asserted mark must acquire secondary meaning prior to the alleged infringer's actual or constructive use of the accused mark. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014) (plaintiff asserting unregistered, common-law trademark must establish both ownership and protectability of the mark, including proof of distinctiveness). "If the senior user cannot prove that its mark possessed secondary meaning at the time defendant commenced its use, there can be no infringement, for if there was no secondary meaning, there was no likelihood of confusion when the junior user arrived on the scene." 2 *McCarthy* § 16:34 (5th ed. 2026); *see also* Restatement (Third) Unfair Competition § 19 cmt. b (A.L.I. 1995) ("The party seeking relief is ordinarily required to establish the existence of secondary meaning at the time of the commencement of use by the other party."). Thus, where a party (like SFC) asserts prior rights in a mark that is descriptive, it must prove that the phrase acquired secondary meaning prior to the alleged infringer's use. *Levi Strauss & Co. v. Blue Bell,*

*Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (affirming that secondary meaning was not proven prior to when defendant's use began); *Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc.*, 188 F.3d 501 (4th Cir. 1999) (affirming that secondary meaning was not proven prior to defendant's constructive use through federal registration). Because secondary meaning turns on consumer perception, advertising, exclusivity, and marketplace use, it is a question of fact rarely suitable for summary judgment. *Marketquest Grp., Inc.*, 316 F. Supp. 3d at 1261–62.

When the accused mark is a registered mark, it is entitled to a date of constructive use from the filing date of the application. 15 U.S.C. § 1057(c) ("the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect."). "'Constructive use' means that which establishes a priority date with the same legal effect as the earliest actual use of a trademark at common law." 2 *McCarthy* § 16:17 (5th ed. 2026) (citations omitted); *accord Zobmondo*, 602 F.3d at 1111 n.3 ("[Registration] gives the applicant priority-of-use over anyone who adopts the mark after the constructive-use date."). One of the important goals of conferring nationwide priority rights from the filing of an application for registration is to "reduce the geographic fragmentation of trademark rights." S. Rep. No. 100-515 at 29 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5577, 5592. Another goal is to incentivize the "prompt registration of marks by rewarding those who first seek registration under the Lanham Act." *Id.* at 30, *as reprinted in* 1988 U.S.C.C.A.N. at 5592 (citation omitted). Constructive uses "put[] the registrant 'there' as if it had actually commenced a commercial level of sales nationwide as of the application date." 4 *McCarthy* § 26:38 (5th ed. 2026). Registration affords both constructive *use* of the mark (*supra*) and constructive *notice* of the registrant's claim of ownership. 15 U.S.C. § 1072. Constructive use occurs as of the date of the application for registration; constructive notice is from the date of registration. 15 U.S.C. §§ 1057(c), 1072.

153140975.7 0084049-00001

###### 2.    Cancellation Based on Likelihood of Confusion – *Sleekcraft* Factors.

The Ninth Circuit has identified eight "relevant" factors for determining whether consumers would likely be confused by related goods: "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (citation omitted). This list of factors "is not exhaustive," and "[o]ther variables may come into play depending on the particular facts presented." *Id.*

The acquisition of secondary meaning provides critical context to the likelihood of confusion analysis. For example, evidence of actual confusion has no weight when the confusion is caused by use of a phrase that has not acquired secondary meaning. *See e.g.*, *Reddi Beverage Co., LLC v. Floral Beverages, LLC*, No. 23 C 6147, 2024 WL 1657420, at *6 (N.D. Ill. Mar. 4, 2024). In *Boston Duck Tours*, the court of appeals held that confusion caused by use of a mark lacking secondary meaning was "not the type of confusion that warrants trademark protection."

> Given our conclusion that "duck tours" is generic, the value of the evidence of actual confusion documented by Boston Duck is diminished substantially for the likelihood of confusion analysis. As a matter of law, the confusion was largely, if not exclusively, the product of Boston Duck's lack of competition in its early years and the use of a generic phrase to describe its product. As such, it is not the type of confusion that warrants trademark protection. We therefore treat that evidence as largely irrelevant in reaching our overall determination.

*Id.*; *accord Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1373 (S.D. Fla. 2010) (finding that, while the evidence showed that customers were confused whether the two establishments were related, such evidence was irrelevant "unless the mark

[was] protectible in the first instance" (citation omitted)), *aff'd*, 702 F.3d 1312 (11th Cir. 2012).

## C.    SFC's Attack on the 2023 Registration Invokes Material Disputed Facts.

SFC's attempt to cancel the 2023 Registration for "confusing resemblance" fails for multiple reasons. First, there are issues of material fact as to whether SFC possesses exclusive rights in the phrase "Superior Fence" in any relevant market. SFC's Motion does not distinguish among its various asserted "marks," and thus fails to establish the threshold elements of *what mark* it allegedly owned and *when*. Second, evidence shows that the instances of confusion on which SFC relies on are attributable to SFC's own aggressive advertising of phrases in which SFC holds no proprietary rights—phrases such as "Superior Fence & Rail" (Plaintiff's registered mark) and the phrase "Superior Fence."

Plaintiff's priority date based on constructive use from the 2010 Registration is the filing date of the underlying application for trademark registration: March 31, 2010. ECF 1-1, at 1. Plaintiff's priority date based on constructive use from the 2023 Registration is the filing date of the underlying application for trademark registration: September 26, 2022. ECF 1-1, at 3. Plaintiff's priority date based on actual use in the Portland Metro area is the date that Plaintiff's franchisee began doing business as Superior Fence & Rail of Portland Metro, on or about the underlying application for trademark registration: September 26, 2022. Decl., Ex. 15.

At minimum, these issues present triable questions that preclude summary judgment.

### 1.    SFC Did Not Own "Superior Fence" in *Any Region* and *Any Time*.

SFC has not owned "Superior Fence" in *any region* at *any time*. A reasonable jury could conclude that, like the plaintiff's use of "duck tours" in *Boston Duck Tours*, SFC's use of "superior fence" does not warrant trademark protection. 531 F.3d at 25.

Applying the "imagination" test, a reasonable juror could discern without any mental steps the "nature of the product being referenced" from the phrase "Superior Fence." *Zobmondo*, 602 F.3d at 1115 (citation omitted). SFC relies on the common meaning of "Superior Fence" in its own advertisements, including using the slogan "A Superior Fence at an Affordable Price." ECF 62 at 6; *see also* Decl., Ex. 16. SFC's owner Greg Heath testified that this "jingle" referred to his brand. Decl., Ex. 11 (Heath Tr. at 86:24-88:19). Since a reasonable juror could discern from this phrase that the nature of SFC goods and services, namely fences, the "imagination" test indicates that the phrase "Superior Fence" is merely descriptive, at best, or generic. *See Jeld-Wen, Inc. v. Dalco Indus., Inc.*, 198 F.3d 250 (8th Cir. 1999) (holding that "elite" is descriptive, like other "self-laudatory marks such as BEST, SUPERIOR, and PREFERRED"); *McCarthy* § 11:17 ("Self-laudatory terms") (5th ed.). The same analysis applies to "Superior Fence and Construction," which simply adds the generic term "construction" to "Superior Fence," much like the business names "Superior Deck and Gazebo" and dozens of other companies that named their business "Superior" with a description of their services in the Portland Metro area during the period that SFC alleges trademark ownership. Willams Decl., Ex. 17 at 3, 8, 13, 18.

Extensive use by others of the term "Superior" and "Superior Fence" indicates that SFC's trade names are descriptive. 1 *McCarthy* § 11:69 (5th ed. 2026) (describing another test for whether a designation is descriptive). As shown in the phone book evidence presented by SFC, dozens of companies use "Superior" in their business names, in combination with a generic term or phrase describing the services rendered, including for example "Superior Appliance Services," "Superior Cleaners," "Superior Deck & Gazebo," etc. Willams Decl., Ex. 17 at 3, 8, 13, 18. Several other companies in Washington, Idaho, and Oregon have used the phrase "Superior

Page 25 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

Fence" in their business name, including contractors licensed in Oregon from 1981 who registered "Superior Fence" as an ABN. *Supra* Section III.A.1-3; Decl., Exs. 3-8, 12 and 14.

Additionally, SFC's actions undermine its claim to own the phrase "Superior Fence." SFC's print advertising shows consistent use of "Superior Fence & Construction" (not "Superior Fence"). Decl., Ex. 17 at 3, 8, 13, 18; *see, e.g.*, *Off. Airline Guides, Inc*, 6 F.3d at 1392 ("The marks must be considered in their entirety and as they appear in the marketplace."). SFC's advertising also shows use of the phrase "Superior Fence" in a generic sense, not as a trademark, for example, in its slogan: "A Superior Fence at an Affordable Price." ECF 62 at 6, *see also* Decl. Ex., 16. SFC's website URL "superiorfence.com" shows an address on the internet, but registration and use of an internet domain does not prove use of a trademark. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (holding that domain name registration and use did not establish trademark rights); *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1059 (10th Cir. 2021) (holding domain name did not create trademark rights and served "as an address by means of which one may reach [his] Internet website"). During this litigation, when SFC applied to register its trademarks with the state of Oregon, SFC filed two applications for "Superior Fence & Construction" as a word mark and as a logo. SFC did *not* register a trademark for "Superior Fence." Decl., ¶ 19, Ex. 18; ECF 44-1 ¶¶ 88-89.

Others registered "Superior Fence" and "Superior Fencing" as an assumed business name ("ABN") in Oregon. Richard Graham, of Klamath Falls, maintained the ABN "Superior Fence" from 1999 to 2017, and registered himself with the Oregon Construction Contractors Board under the name "Superior Fence" starting from 1981. Decl., 3. Superior Fencing LLC of Medford and Central Point, Oregon, has maintained the ABN "Superior Fencing" in the Oregon Secretary of State from 2003 to the present time. Decl., Exs., 7-8. In contrast, SFC did not

register "Superior Fence" as an ABN at any time. To the extent that SFC claims to have used "Superior Fence" without registering the phrase as an ABN, such use is unlawful, including under Oregon law (*see* ORS 648.007(1) *et seq.*) and cannot support a claim of priority. *See e.g., CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626 (9th Cir. 2007) (holding that unlawful use of a mark could not support a claim of priority).

At deposition, when asked why SFC did not register "Superior Fence" as a trademark, SFC's corporate designee had no plausible explanation: "Well, I'm not an attorney, but I assumed that I had the right to use all three of these words . . . I assumed 'Superior Fence & Construction' or 'Superior Fence,' I had the right to use since 1990. They're mine. I've owned 'em." Decl., Ex. 11 (Heath Tr. at 176:22-177:6). When asked if he had any other reasons for not registering "Superior Fence," he stated "I guess I didn't know I had to." *Id.* 177:7-11. A reasonable jury could infer from these facts that others used the phrase "Superior Fence" in Oregon, and that SFC did not, in fact, own any proprietary rights in the phrase "Superior Fence."

### 2. SFC Caused Confusion by Using "Superior Fence & Rail" to Advertise Its Own Services in the Portland Metro Area Since 2024.

Any confusion between SFC and SF&R has been caused by SFC's aggressive advertising of phrases in which SFC holds no proprietary rights—phrases such as "Superior Fence & Rail" (Plaintiff's registered mark) and the non-proprietary phrase "Superior Fence."

Around early 2024, SFC created a webpage on SFC's website that appeared in Google search results as "Superior Fence & Rail – Portland." *E.g.*, Decl., Ex. 17; Ex. 24 ("Resk Tr." at 82:6-13, 82:25-83:23). As explained by David Resk, the corporate witness of SFC's marketing firm ("At Large Marketing"), both the web address (URL) and page title included SFR's name and registered mark—"Superior Fence and Rail." Decl., Ex. 17 (Resk Tr. at 155:17-156:21); Decl., Ex. 20. Mr. Resk explained that he understood such use of a competitor's name in the

Page 27 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

153140975.7 0084049-00001

webpage coding to be "black hat SEO" and a "published error." Decl., Ex. 17 (Resk Tr. at 40:15-43:24, 84:12-86:22). He attributed the error to his team's use of ChatGPT to create webpage content without adequate proofing. *Id.* 41:8-24; 85:12-22. Although Mr. Resk purportedly corrected the webpage URL and title in January 2026, neither witness could say how long the "published error" had existed. *Id.* 43:25-44:3.

Additionally, around early 2024, Mr. Resk created a "brand defense" Google ads campaign on behalf of SFC that used targeted keywords including "Superior Fence & Rail." *Id.* 49:25-50:21, 128:16-129:9; Decl., Ex. 19. Mr. Resk described this practice as "not poaching per se" but "[i]t's still a land grab" and "[i]t's a position play to try and grab as much market share as possible." Decl., Ex. 21 (Resk Tr. at 115:13-24). The digital ads delivered to consumers by this campaign included headings such as "The Original Superior Fence," "Superior Fence & Rail – Portland," and other headings crafted by AI. Decl., Ex. 23; *see also* Decl., Ex. 21 (Resk Tr. at 110:17-111:25, 138:1-11) (describing Google AI Max feature). Every one of these ads linked to SFC's website. *Id.* at 132:5-8; Decl., Ex. 24 (final URL). The effect was that consumers searching for the phrase "superior fence and rail" were directed to *SFC's* services. For example, one customer talked with Superior Fence & Rail at the 2026 Home and Garden show at the Portland Expo Center. Although SFC was not at the 2026 Home and Garden show, the customer followed up with SFC, filled out SFC's contact form on SFC's website, and requested a quote from SFC. Decl., Ex. 25 ("Bunn Tr." at 29:4-30:11);Decl., Ex. 22. As SFC's corporate representative confirmed, this showed a customer "looking for Superior Fence & Rail and finding [SFC]," reflecting actual confusion caused by SFC's advertising. Decl., Ex. 25 (Bunn Tr. at 30:6-11).

153140975.7 0084049-00001

### 3.    *Sleekcraft* Factors Confirm That Summary Judgment Is Improper.

Even if SFC established ownership and priority, which it has not, its Motion fails because SFC has not demonstrated a likelihood of confusion a matter of law. SFC relies almost entirely on the assertion that the parties' marks are similar and that confusion has occurred, ignoring the governing *Sleekcraft* factors altogether and offering no analysis demonstrating how those factors, taken as a whole, warrant judgment as a matter of law. Critically, the *Sleekcraft* analysis requires consideration of multiple factors, including strength of the mark, proximity of goods, similarity of the marks, evidence of actual confusion, marketing channels, degree of purchaser care, intent, and likelihood of expansion, with no single factor is dispositive. *Network Automation, Inc.*, 638 F.3d at 1145. Given the factual nature of trademark disputes, summary judgment is generally disfavored. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1031 (9th Cir. 2010) (citation omitted).

SFC's failure to meaningfully address, let alone apply, this governing standard is itself grounds to deny the motion. However, that failure is especially consequential where, as here, the *Sleekcraft* factors support competing inferences, rendering summary judgment inappropriate. *See*, *e.g.*, *id.* at 1044 (reversing summary judgment where *Sleekcraft* factors presented disputed factual issues); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123 (2004) (recognizing the fact-intensive nature of trademark disputes).

For example, as discussed above, the descriptiveness and extensive third-party use of "Superior Fence" supports a reasonable inference that any asserted mark is weak, a factor weighing against confusion. *See Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999). Additionally, SFC's evidence of confusion is tied to its own use of Plaintiff's mark in advertising, raising a factual dispute as to both causation and the probative

Page 29 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

value of such evidence. Moreover, SFC's use of "Superior Fence & Rail" in online marketing creates a triable issue regarding intent, another key factor in the analysis. *See Brookfield*, 174 F.3d at 1059. This overview demonstrates that the *Sleekcraft* analysis turns on competing factual inferences that cannot be resolved as a matter of law, especially on an issue for which SFC carries the burden but presented no evidence or argument in its Motion.

In sum, a reasonable juror could reach different conclusions regarding likelihood of confusion. Accordingly, summary judgment cancelling the 2023 Registration based on "confusing resemblance" should be denied.

### 4.    Plaintiff's Affirmative Defenses Also Preclude Summary Judgment.

Plaintiff's defenses to SFC's Counterclaim for cancellation of the 2023 Registration provide additional grounds to deny SFC's Motion. Without any meaningful analysis, SFC proclaims that none of Lynx's defenses are relevant to cancellation of the 2023 Registration. Mot. at 24. SFC ignores and conceals genuine disputes of material fact.

Plaintiff's defenses, including its Fourth Defense challenging SFC's lack of ownership of SFC's asserted trademark rights, go directly to whether SFC can meet its burden to cancel the 2023 Registration based on alleged confusion with SFC's asserted rights. For reasons discussed above, issues of material fact exist precluding summary judgment as to these defenses.

SFC does not even attempt to address Plaintiff' unclean hands defense, a defense that directly bears on the relief SFC seeks. "Trademark law's unclean hands defense springs from the rationale that it is essential that the plaintiff should not in his trade mark, or in his advertisements and business, be himself guilty of any false or misleading representation." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (internal quotation marks and citation omitted). Therefore, the inquiry focuses on whether the party asserting rights acted with

intent to deceive consumers in connection with the mark. *See, e.g.*, *id.* at 870-71.

As discussed above, the record contains substantial evidence that SFC used Plaintiff's mark "Superior Fence & Rail" in its online advertising and search engine optimization practices, and that any confusion resulted from those actions. At a minimum, that evidence creates a triable issue of fact regarding SFC's conduct, intent, and entitlement to equitable relief. Because the unclean hands defense turns on disputed issues of intent, good faith, and causation, issues that are inherently fact-bound, SFC cannot establish entitlement to judgment as a matter of law on its Fourth Counterclaim for cancellation of Plaintiff's trademark registration.

## IV.  SUMMARY JUDGMENT IS NOT APPROPRIATE AS TO PLAINTIFF'S FIRST, SECOND, AND THIRD CLAIMS

SFC's request to dismiss Plaintiff's First, Second, and Third Claims rests on the same flawed premises underlying SFC's motion to cancel the 2023 Registration, namely, that SFC has established prior rights in a protectable mark and that confusion is undisputed. As set forth above, neither premise is established as a matter of law, and both are subject to genuine disputes of material fact. For that reason alone, SFC's derivative request to dismiss Plaintiff's First, Second, and Third claims should be denied.

SFC's attack on Lynx's registrations should fail for the reasons explained above. Even if SFC's attack were successful, it would not negate Lynx's Second and Third Claims. Lynx's Second and Third Claims are supported by the evidence facts set forth in Section III, *supra*, regarding SFC's incorporation of the phrase "Superior Fence & Rail" into SFC's own website and into SFC's "brand defense" digital advertising campaign. *Supra* Section III. By these actions, SFC promoted the same type of services as SF&R (fence installation services), using an identical mark (SF&R's name), in the same marketing channels as SF&R (Google ads), causing actual confusion, in competition with SF&R, and with an intent to divert customers from SF&R

Page 31 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
153140975.7 0084049-00001

to SFC. *See Network Automation*, *Inc.*, 638 F.3d at 1145 (summarizing *Sleekcraft* factors). A reasonable juror could conclude that SFC's actions have been likely to cause confusion, to cause mistake, or to deceive as to SFC's affiliation, connection, or association with "Superior Fence & Rail," regardless of whether Lynx holds a federal trademark registration. *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1997).

SFC argues that Lynx's own allegations that SFC's Mark is descriptive undermine Lynx's First, Second, and Third Claims. Mot. at 25. SFC's argument is misplaced, first, because SFC's unlawful acts include using Lynx's *Superior Fence & Rail* mark—which Lynx does not allege to be descriptive—in a manner likely to cause confusion, to cause mistake, or to deceive. Second, SFC overstates the scope of classic fair use. Descriptive uses of a phrase can still be liable for infringement if they are likely to cause confusion. *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984) (holding fair use inapplicable "to immunize [the alleged infringer] from liability for infringement even where likelihood of confusion has been shown"). Third, SFC asserts multiple marks under the term "'Superior Fence trade names and marks" (Mot. at 25), and Lynx maintains that at least the phrase "Superior Fence" is descriptive. Thus, Lynx's allegations that the Accused Marks "lack inherent distinctiveness" (ECF 1, ¶¶ 25, 28) are not so "deliberate, clear, and unequivocal" as to constitute judicial admissions on likelihood of confusion. *Scarff v. Intuit, Inc.*, 318 Fed. Appx. 483, 487 (9th Cir. 2008) (citation omitted).

SFC's additional grounds, failure to state a claim, estoppel, and prior rights, likewise do not support summary judgment. *First,* SFC's renewed assertion that Lynx has failed to state a claim is procedurally improper at the summary judgment stage.

*Second*, SFC's estoppel arguments (Third Affirmative Defense) fail because they neither establish the required elements nor eliminate factual disputes. As a preliminary matter, SFC does

not even identify which estoppel doctrine it is invoking or the governing legal standard, instead leaving the Court and Lynx to speculate as to the legal theory it intends to assert. Nevertheless, SFC has not, and cannot, demonstrate as a matter of law that Lynx is estopped from arguing that "Superior Fence" is descriptive under any estoppel standard.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1044-45 (9th Cir. 2016) (quotation omitted). Courts consider whether (1) the later position is "clearly inconsistent" with the earlier one; (2) a court accepted the earlier position such that acceptance of the later one would create the perception that a court was misled; and (3) the party would gain an unfair advantage absent estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

SFC has not acknowledged, yet alone shown as a matter of law, any of these elements. There is no "clearly inconsistent position." Lynx's position that "Superior Fence" is descriptive is fully consistent with its ownership and enforcement of the composite mark "Superior Fence & Rail," which must be evaluated as a whole and may be distinctive even if one component is not. *See Off. Airline Guides, Inc*, 6 F.3d at 1392. SFC's argument collapses this distinction by attempting to derive rights in a descriptive phrase from a separate composite mark, thereby assuming that "Superior Fence" is distinctive. Nor has SFC shown that any court "accepted" a supposedly inconsistent position. Registration of Lynx's "Superior Fence & Rail" mark does not establish that "Superior Fence" is inherently distinctive, nor does it demonstrate that the PTO affirmatively considered, or relied on, any position by Plaintiff regarding descriptiveness of "Superior Fence." Finally, SFC does not demonstrate any unfair advantage arising from Lynx's current position, which is consistent with established trademark principles governing composite

Page 33 – LYNX'S OPP. TO DEF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

153140975.7 0084049-00001

marks and descriptiveness. SFC has not established that Lynx took inconsistent positions, much less that any court accepted such positions, further precluding summary judgment.

Any equitable estoppel theory likewise fails. SFC identifies no reasonable reliance on any purported representation. At most, any such theory depends on issues of intent, credibility, and reliance that are not appropriate for resolution on summary judgment.

*Third*, SFC's prior-rights argument (Fifth Affirmative Defense) fails for the same reasons addressed above and likewise does not eliminate material factual disputes. This defense requires resolution by the factfinder of the same disputed facts that prevent summary judgment on SFC's counterclaim to cancel the 2023 Registration for a likelihood of confusion. Material facts enable a reasonable juror to conclude that SFC did not acquire trademark rights in "Superior Fence" prior to SF&R's actual or constructive use of "Superior Fence & Rail" in the Portland area. *Supra* Section III.C. SFC has not established, as a matter of law, that it owns a protectable mark, when any such rights arose, or the geographic scope of those rights. Nor has it shown that any alleged confusion is attributable to Lynx rather than SFC's own conduct. At a minimum, the record presents triable issues on each of these points, which independently preclude summary judgment for dismissal of Lynx's claims.

SFC arguments fail to resolve the triable issues of fact. SFC argues that Lynx's federal registrations of "Superior Fence & Rail, Inc." and "Superior Fence & Rail" conclusively establish the distinctiveness of SFC's marks. Not so. As SFC admits, "Superior Fence & Rail" was initially refused as descriptive but was subsequently registered under a statutory presumption of acquired distinctiveness *in the context of a trademark application* after five years use. Mot. 32 (citing 15 U.S.C. § 1052(f)). No authority supports SFC's request to displace the fact-finding role of the jury with a statutory presumption *in the context of an action for*

*trademark infringement*. The sole case cited by SFC affirmed a finding of acquired distinctiveness following a bench trial, and the decision was supported by substantial evidence presented at trial, not by a statutory presumption alone. *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1216 (9th Cir. 2023). The correct inquiry is whether SFC has proved prior rights, for example via the "imagination" test or the use-by-others test for distinctiveness, and SFC has not carried that burden. *Supra*. SFC's efforts to circumvent the "intensely factual issue" of trademark validity on summary judgment should be denied. *KP Permanent Make–Up, Inc.,* 408 F.3d at 605.

SFC argues that uses by others are insubstantial. Mot. 33. This argument is irrelevant to the test of whether a mark is descriptive. When others used the same words "Superior" and "Superior Fence" for their business, such use shows that the words have a common, descriptive meaning, regardless of whether the business was substantial or not. *See* Decl., Ex. 17 at 3, 8, 13, 18; *supra* Section III.A.1-3. The fact that the term "Superior Fence" has been registered or used as a business name supports the conclusion that it is descriptive. Additionally, SFC carries the burden of proof on secondary meaning, and SFC provided no evidence regarding its own sales, how its use compares to the overall size of the market, or how its use compares to other uses of "Superior Fence." Without such evidence, SFC cannot carry its burden at summary judgment.

Issues of material fact preclude dismissal of Plaintiff's First, Second, or Third Claims on summary judgment. Likewise, SFC's Motion seeks a declaration of prior rights. Mot. 34. For the same reasons that SFC's prior-rights defense (Fifth Affirmative Defense) is not entitled to summary judgment, SFC is not entitled to a declaration of prior rights on summary judgment.

## V.  CONCLUSION

For the foregoing reasons, the Court should deny SFC's Motion in its entirety.

DATED: June 3, 2026

STOEL RIVES LLP

*Elliott Williams*

ELLIOTT J. WILLIAMS, Bar No. 144835
elliott.williams@stoel.com

BRIAN D. BOLLT, Bar No. 223576
brian.bollt@stoel.com

AUSTIN L. ZUCK, Bar No. 257130
austin.zuck@stoel.com

*Attorneys for Plaintiff Lynx Franchising
Intellectual Property, LLC*